1   TRACY L. WILKISON
    United States Attorney
2   JERRY C. YANG
    Assistant United States Attorney
3   Chief, Riverside Branch Office
    RUBEN ESCALANTE (Cal. Bar No. 244596)
4   Assistant United States Attorney
    Riverside Branch Office
5        3403 Tenth Street, Suite 200
         Riverside, CA 92501
6        Telephone: (951) 276-6212
         Facsimile: (951) 276-6202
7        E-mail:   ruben.escalante@usdoj.gov

8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

```
               F I L E D
       CLERK, U.S. DISTRICT COURT

             5/11/2022

    CENTRAL DISTRICT OF CALIFORNIA
    BY: _____ RAM _____ DEPUTY
```

10                UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,          No. 2:22-CR-00197-DMG

13           Plaintiff,                 PLEA AGREEMENT FOR DEFENDANT
                                        JUNG KYOO MOON
14              v.

15   JUNG KYOO MOON,

16           Defendant.

17

18        1.   This constitutes the plea agreement between JUNG KYOO MOON

19   ("defendant") and the United States Attorney's Office for the Central

20   District of California (the "USAO") in the investigation of wire

21   fraud committed by defendant.  This agreement is limited to the USAO

22   and cannot bind any other federal, state, local, or foreign

23   prosecuting, enforcement, administrative, or regulatory authorities.

24                       DEFENDANT'S OBLIGATIONS

25        2.   Defendant agrees to:

26            a.   Give up the right to indictment by a grand jury and,

27   at the earliest opportunity requested by the USAO and provided by the

28   Court, appear and plead guilty to a sole-count information in the

form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with wire fraud in violation of 18 U.S.C. § 1343.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Not argue for, recommend, or suggest a term of imprisonment less than 24 months.

i.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

1         j.   Complete the Financial Disclosure Statement on a form

2  provided by the USAO and, within 30 days of defendant's entry of a

3  guilty plea, deliver the signed and dated statement, along with all

4  of the documents requested therein, to the USAO by either email at

5  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

6  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

7  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

8  criminal debt shall be assessed based on the completed Financial

9  Disclosure Statement and all required supporting documents, as well

10  as other relevant information relating to ability to pay.

11         k.   Authorize the USAO to obtain a credit report upon

12  returning a signed copy of this plea agreement.

13         l.   Consent to the USAO inspecting and copying all of

14  defendant's financial documents and financial information held by the

15  United States Probation and Pretrial Services Office.

16     3.   Defendant further agrees:

17         a.   To forfeit all right, title, and interest in and to

18  any and all monies, properties, and/or assets of any kind, derived

19  from or acquired as a result of, or used to facilitate the commission

20  of, or involved in the illegal activity to which defendant is

21  pleading guilty, specifically including, but not limited to, the

22  following that was seized on September 24, 2020:  $27,372 in U.S.

23  currency (the "Forfeitable Property").

24         b.   To the Court's entry of an order of forfeiture at or

25  before sentencing with respect to the Forfeitable Property and to the

26  forfeiture of the property.

27         c.   To take whatever steps are necessary to pass to the

28  United States clear title to the Forfeitable Property, including,

without limitation, the execution of a consent decree of forfeiture
and the completing of any other legal documents required for the
transfer of title to the United States.

d.   Not to contest any administrative forfeiture
proceedings or civil judicial proceedings commenced against the
Forfeitable Property.  If defendant submitted a claim and/or petition
for remission for all or part of the Forfeitable Property on behalf
of himself or any other individual or entity, defendant shall and
hereby does withdraw any such claims or petitions, and further agrees
to waive any right he may have to seek remission or mitigation of the
forfeiture of the Forfeitable Property. Defendant further waives any
and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e.   Not to assist any other individual in any effort
falsely to contest the forfeiture of the Forfeitable Property.

f.   Not to claim that reasonable cause to seize the
Forfeitable Property was lacking.

g.   To prevent the transfer, sale, destruction, or loss of
the Forfeitable Property to the extent defendant has the ability to
do so.

h.   To fill out and deliver to the USAO a completed
financial statement listing defendant's assets on a form provided by
the USAO.

i.   That forfeiture of Forfeitable Property shall not be
counted toward satisfaction of any special assessment, fine,
restitution, costs, or other penalty the Court may impose.

j.   To the entry as part of defendant's guilty plea of a
personal money judgment of forfeiture against defendant in the amount
of $1,509,879.87, which sum defendant admits was derived from

1   proceeds traceable to the violations described in the factual basis.

2   Defendant understands that the money judgment of forfeiture is part

3   of defendant's sentence and is separate from any fines or restitution

4   that may be imposed by the Court.

5           k.   To the abandonment to the United States of any

6   interest of the defendant in the following items that were seized on

7   September 24, 2020:

8                   i.   One white Galaxy Note 4 IMEI: 352305/07/014235/8;

9                   ii.  One Samsung Galaxy S10 Black IMEI:

10  35729510034329;

11                  iii. One blue LG IMEI: 356351-09-287971-4 with power

12  cord;

13                  iv.  One MSI Black Desktop with no serial number;

14                  v.   One gray HP Laptop SN 5CG9377Q5L;

15                  vi.  One black Dell Optiplex 7010 Desktop computer

16  18080286013;

17                  vii. One gray and black ZTE flip phone;

18                  viii.   One white Galaxy Express 3 213-453-9860;

19                  ix.  One black Alcatel phone 213-595-2801;

20                  x.   One gray Samsung phone IMEI 359479/09/168152;

21                  xi.  One gray HP Laptop Model 7M-CE1013DX;

22                  xii. One gray HP Laptop Model 14-dk0002dx;

23                  xiii.   One black Samsung phone model SM-A015T1;

24                  xiv. One gold memo pad;

25                  xv.  One black spiral notebook;

26                  xvi. Bank receipts;

27                  xvii.   One black Sandisk 16 GB Thumb Drive;

28                  xviii.  One black Sandisk U3 Thumb Drive;

1                xix. US Bank statements;

2                xx.  Miscellaneous documents;

3                xxi. Bank and other documents;

4                xxii.   One black leather notebook;

5                xxiii.   Tax documents; and

6                xxiv.    Filed JK Trading Fictitious Business Name

7 Statement (collectively, the "Seized Items").

8         l.   To acknowledgement by defendant that he is the sole

9 owner of the Seized Items and that no other person or entity has an

10 interest in the Seized Items.

11         m.   To complete any legal documents (including, but not

12 limited to, a Federal Bureau of Investigation Waiver of Ownership of

13 Property Form and Federal Bureau of Investigation Agreement for

14 Destruction of Property Form) required for the transfer of title of

15 the Seized Items to the United States.

16         n.   With respect to any criminal forfeiture ordered as a

17 result of this plea agreement, defendant waives: (1) the requirements

18 of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

19 notice of the forfeiture in the charging instrument, announcements of

20 the forfeiture sentencing, and incorporation of the forfeiture in the

21 judgment; (2) all constitutional and statutory challenges to the

22 forfeiture (including by direct appeal, habeas corpus or any other

23 means); and (3) all constitutional, legal, and equitable defenses to

24 the forfeiture of the Forfeitable Property and money judgment of

25 forfeiture in any proceeding on any grounds including, without

26 limitation, that the forfeiture or money judgment of forfeiture

27 constitutes an excessive fine or punishment.  Defendant acknowledges

28 that forfeiture of the Forfeitable Property and entry of the money

judgment of forfeiture are part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

4.  The USAO agrees to:

a.  Not contest facts agreed to in this agreement.

b.  Abide by all agreements regarding sentencing contained in this agreement.

c.  At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.  Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1028A (Aggravated Identity Theft), 1341 (Mail Fraud), 1343 (Fraud by Wire, Radio, or Television), and 1349 (Attempt and Conspiracy to Commit Mail or Wire Fraud) arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 11 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any

departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 22 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

NATURE OF THE OFFENSE

5.    Defendant understands that for defendant to be guilty of the crime charged in the sole count of the indictment, that is, wire fraud in violation of Title 18, United States Code, Section 1343, the following must be true:  (1) defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means or false or fraudulent pretenses, representations, promises, or omitted facts; (2) the statements made or facts omitted as part of the scheme were material; (3) defendant acted with intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate wire communication to carry out an essential part of the scheme.

PENALTIES AND RESTITUTION

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is:  20 years imprisonment; a 3-year period of

8

supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty ;and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is approximately $1,509,879.87, but recognize and agree

9

that this amount could change based on facts that come to the attention of the parties prior to sentencing.

9.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration

1   status.  Defendant nevertheless affirms that he wants to plead guilty

2   regardless of any immigration consequences that his plea may entail,

3   even if the consequence is automatic removal from the United States.

4                              FACTUAL BASIS

5        11.  Defendant admits that defendant is, in fact, guilty of the

6   offense to which defendant is agreeing to plead guilty.  Defendant

7   and the USAO agree to the statement of facts provided below and agree

8   that this statement of facts is sufficient to support a plea of

9   guilty to the charge described in this agreement and to establish the

10  Sentencing Guidelines factors set forth in paragraph 13 below but is

11  not meant to be a complete recitation of all facts relevant to the

12  underlying criminal conduct or all facts known to either party that

13  relate to that conduct.

14       Defendant resided in Los Angeles County within the Central

15  District of California.  Private lenders Business Backer, Next Wave,

16  OnDeck, and Kapitus (the "victim lenders") issued loans to small

17  business applicants.  The victim lenders accepted electronic

18  applications and, upon approval, submitted the loan funds to a

19  business account designated by the applicant.  Approved applicants

20  were required to pay back the loan, including a predetermined amount

21  of interest.

22       Between February 2016 and January 2020, in Los Angeles County,

23  and elsewhere, defendant, together with others, knowingly and with

24  the intent to defraud and cheat, devised, participated in, and

25  executed a scheme to defraud victim lenders as to material matters,

26  and to obtain money from victim lenders by means of material false

27  and fraudulent pretenses, representations, and promises, and the

28  concealment of material facts.

1       Specifically, defendant knowingly participated in and devised a
2   scheme to fraudulently apply for and obtain loans from victim lenders
3   and unemployment insurance benefits from the California Employment
4   Development Department ("EDD").  Defendant used the Internet, an
5   interstate wire communications network, to carry out this scheme.  In
6   carrying out the scheme, defendant acted with the intent to defraud.
7   The total calculated loss from this scheme was approximately
8   $1,509,879.87.

9       With respect to the loan fraud, between February 2016 and
10  January 2020, defendant and his co-schemers fraudulently applied for
11  and obtained loans from the victim lenders by submitting false
12  information and documentation.  The false documentation included
13  falsified bank statements and counterfeit California driver licenses
14  ("CDLs").  Defendant and his co-schemers would open bank accounts in
15  the names of businesses.  The victim lenders, relying on defendant's
16  and his co-schemers' fraudulent applications, would approve loans and
17  transfer loan proceeds into the bank accounts for the businesses that
18  defendant and his co-schemers controlled.  Defendant and his co-
19  schemers would then transfer most, if not all, the loan proceeds to
20  other bank accounts they controlled, after which defendant and his
21  co-schemers closed the bank accounts for the businesses.  When the
22  loans were due, defendant and his co-schemers either paid back only a
23  fraction of the loans or none at all to the victim lenders.

24      As part of the scheme, defendant and his co-schemers would
25  create and use Gmail accounts to communicate with the victim lenders
26  in furtherance of the fraudulent scheme.  Defendant and his co-
27  schemers would also use temporary phones and phone numbers when

28

communicating with the victim lenders in furtherance of the fraudulent scheme.

In all, defendant fraudulently obtained at least 21 loans and credit extensions as part of this scheme through which defendant obtained at least $1,491,820.00 in loans.  Of that amount, defendant paid back only $83,892.13, resulting in a loss of approximately $1,407,927.87 to the victim lenders.

Defendant fraudulently obtained the following loan:  On or about January 3, 2020, in Los Angeles County, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant caused the transmission of the following items by means of wire and radio communication in interstate and foreign commerce:  a wire transfer of $60,000 from Rapid Finance, a private lender, which originated in Maryland and deposited in a bank account in California over which defendant exercised control, that is, Open Bank account ending in 9977.

Defendant also fraudulently obtained the following loans: $75,000 from Business Backer on or about February 17, 2016; $120,000 from Business Backer on or about March 6, 2016; $70,000 from Next Wave on or about August 4, 2016; $68,750 from OnDeck on or about December 9, 2016; $107,250 from OnDeck on or about December 27, 2016; $49,590 from Kapitus on or about February 21, 2017; $48,735 from Kapitus on or about June 8, 2017; $48,750 from OnDeck on or about June 9, 2017; $195,000 from OnDeck on or about June 10, 2017; $58,201 from Rapid Finance on or about September 6, 2017; $97,500 from OnDeck on or about July 12, 2017; $58,201 from Rapid Finance on or about September 6, 2017; $77,960 from Kapitus on or about August 27, 2018; $68,230 from Kapitus on or about October 25, 2018; $50,000 from

OnDeck on or about November 13, 2018; $69,901 from Rapid Finance on or about November 17, 2018; $79,651 from Rapid Finance on or about July 10, 2019; $30,901 from Rapid Finance on August 29, 2019; $24,250 from OnDeck on or about August 30, 2019; and $33,950 from OnDeck on or about January 8, 2020.

In addition to his participation in the above scheme, in October 2019 defendant fraudulently obtained a personal loan in the amount of $40,000 from Lightstream Lending, a division of Suntrust Bank.  In his loan application, defendant listed with intent to defraud that he worked as a supervisor for a company called Euro Design and earned $120,000 per year, both of which he knew to be false.  Defendant applied for the $40,000 loan using the Internet.

Moreover, in 2020, defendant, with intent to defraud, applied for and received unemployment insurance benefits from the EDD.  He used the Internet to submit these applications.  For example, in June 2020, defendant submitted an application to the EDD, in which he falsely claimed his employer as Kuhmo with an annual salary of $24,000.  Defendant received $16,024, as a result of this application.  In May 2020, defendant submitted an application to the EDD for S.O.K. (his wife), in which he falsely claimed that her annual income was $24,000 and that her employment was terminated due to the COVID-19 pandemic.  Defendant received $14,408, as a result of this application.  In June 2020, defendant submitted an application to the EDD for L.P., without her authorization, and collected the proceeds.  Defendant received $13,160 as a result of this application.  In July 2020, defendant submitted an application to the EDD for Joong Park, which was one of defendant's aliases, and collected the proceeds.  Defendant received $18,360 as a result of

14

this application.  In all, defendant fraudulently obtained at least approximately $61,952 in unemployment insurance benefits.

SENTENCING FACTORS

12.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss greater than $1,500,000 | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| More than $1,000,000 in gross receipts from financial institutions | +2 | U.S.S.G. § 2B1.1(b)(17)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing

15

1    Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

2    (a)(2), (a)(3), (a)(6), and (a)(7).

3                    WAIVER OF CONSTITUTIONAL RIGHTS

4        16.  Defendant understands that by pleading guilty, defendant

5    gives up the following rights:

6             a.   The right to persist in a plea of not guilty.

7             b.   The right to a speedy and public trial by jury.

8             c.   The right to be represented by counsel -- and if

9    necessary have the Court appoint counsel -- at trial.  Defendant

10   understands, however, that, defendant retains the right to be

11   represented by counsel -- and if necessary have the Court appoint

12   counsel -- at every other stage of the proceeding.

13            d.   The right to be presumed innocent and to have the

14   burden of proof placed on the government to prove defendant guilty

15   beyond a reasonable doubt.

16            e.   The right to confront and cross-examine witnesses

17   against defendant.

18            f.   The right to testify and to present evidence in

19   opposition to the charges, including the right to compel the

20   attendance of witnesses to testify.

21            g.   The right not to be compelled to testify, and, if

22   defendant chose not to testify or present evidence, to have that

23   choice not be used against defendant.

24            h.   Any and all rights to pursue any affirmative defenses,

25   Fourth Amendment or Fifth Amendment claims, and other pretrial

26   motions that have been filed or could be filed.

27            i.   Understanding that the government has in its

28   possession digital devices and/or digital media seized from

                                    16

defendant, defendant waives any right to the return of digital data
contained on those digital devices and/or digital media and agrees
that if any of these digital devices and/or digital media are
returned to defendant, the government may delete all digital data
from those digital devices and/or digital media before they are
returned to defendant.

WAIVER OF APPEAL OF CONVICTION

17.  Defendant understands that, with the exception of an appeal
based on a claim that defendant's guilty plea was involuntary, by
pleading guilty defendant is waiving and giving up any right to
appeal defendant's conviction on the offense to which defendant is
pleading guilty.  Defendant understands that this waiver includes,
but is not limited to, arguments that the statute to which defendant
is pleading guilty is unconstitutional, and any and all claims that
the statement of facts provided herein is insufficient to support
defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

18.  Defendant agrees that, provided the Court imposes a total
term of imprisonment on all counts of conviction of no more than 51
months, defendant gives up the right to appeal all of the following:
(a) the procedures and calculations used to determine and impose any
portion of the sentence; (b) the term of imprisonment imposed by the
Court; (c) the fine imposed by the Court, provided it is within the
statutory maximum; (d) to the extent permitted by law, the
constitutionality or legality of defendant's sentence, provided it is
within the statutory maximum; (e) the amount and terms of any
restitution order, provided it requires payment of no more than
$1,509,879.87; (f) the term of probation or supervised release

imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

20.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $1,509,879.87.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

21.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was

involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

22.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

23.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not

be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

24. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

1          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

2                           OFFICE NOT PARTIES

3          25.  Defendant understands that the Court and the United States

4    Probation and Pretrial Services Office are not parties to this

5    agreement and need not accept any of the USAO's sentencing

6    recommendations or the parties' agreements to facts or sentencing

7    factors.

8          26.  Defendant understands that both defendant and the USAO are

9    free to: (a) supplement the facts by supplying relevant information

10   to the United States Probation and Pretrial Services Office and the

11   Court, (b) correct any and all factual misstatements relating to the

12   Court's Sentencing Guidelines calculations and determination of

13   sentence, and (c) argue on appeal and collateral review that the

14   Court's Sentencing Guidelines calculations and the sentence it

15   chooses to impose are not error, although each party agrees to

16   maintain its view that the calculations in paragraph 13 are

17   consistent with the facts of this case.  While this paragraph permits

18   both the USAO and defendant to submit full and complete factual

19   information to the United States Probation and Pretrial Services

20   Office and the Court, even if that factual information may be viewed

21   as inconsistent with the facts agreed to in this agreement, this

22   paragraph does not affect defendant's and the USAO's obligations not

23   to contest the facts agreed to in this agreement.

24         27.  Defendant understands that even if the Court ignores any

25   sentencing recommendation, finds facts or reaches conclusions

26   different from those agreed to, and/or imposes any sentence up to the

27   maximum established by statute, defendant cannot, for that reason,

28   withdraw defendant's guilty plea, and defendant will remain bound to

                                   21

1  fulfill all defendant's obligations under this agreement.  Defendant

2  understands that no one -- not the prosecutor, defendant's attorney,

3  or the Court -- can make a binding prediction or promise regarding

4  the sentence defendant will receive, except that it will be within

5  the statutory maximum.

6                      NO ADDITIONAL AGREEMENTS

7       28.  Defendant understands that, except as set forth herein,

8  there are no promises, understandings, or agreements between the USAO

9  and defendant or defendant's attorney, and that no additional

10  promise, understanding, or agreement may be entered into unless in a

11  writing signed by all parties or on the record in court.

12             PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13       29.  The parties agree that this agreement will be considered

14  part of the record of defendant's guilty plea hearing as if the

15  entire agreement had been read into the record of the proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
18  CALIFORNIA

19  TRACY L. WILKISON
    United States Attorney                    4/25/22

20

21  _____     _____
    RUBEN ESCALANTE                     Date
22  Assistant United States Attorney

23  _____     _____
    JUNG KYOO MOON                      Date          3-25-22
24  Defendant

25  _____     _____
    H. RUSSELL HALPERN                  Date          3-25-22
26  Attorney for Defendant JUNG KYOO
    MOON

27

28

                              22

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  This agreement has been read to me in Korean, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          3 - 25 - 22
JUNG KYOO MOON                            Date
Defendant


CERTIFICATION OF INTERPRETER

I, __Hyon K. Ro__, am fluent in the written and spoken English and Korean languages.  I accurately translated this entire agreement from English into Korean to defendant JUNG KYOO MOON on this date.

23

INTERPRETER _____ #300799 (cert#)

Date 3/25/2022

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JUNG KYOO MOON's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

H. RUSSELL HALPERN
Attorney for Defendant JUNG KYOO
MOON

Date 3/25/22

24

**EXHIBIT A**

**EXHIBIT A**

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                          April 2021 Grand Jury

11    UNITED STATES OF AMERICA,          ED CR No.

12              Plaintiff,               I N F O R M A T I O N

13              v.                       [18 U.S.C. § 1343: Wire Fraud; 18
                                         U.S.C. § 981(a)(1)(C) and 28
14    JUNG KYOO MOON,                    U.S.C. § 2461(c): Criminal
                                         Forfeiture]
15              Defendant.

16

17         The United States Attorney charges:

18                          [18 U.S.C. § 1343]

19    A.    INTRODUCTORY ALLEGATIONS

20         1.   At all times relevant to this Information:

21              a.   Defendant JUNG KYOO MOON resided in Los Angeles County

22    within the Central District of California.

23              b.   Defendant MOON exercised control over Open Bank

24    account ending in 9977 (the "Open Bank Account") and other bank

25    accounts (collectively the "Bank Accounts").

26

27

28

B.   <u>SCHEME TO DEFRAUD</u>

2.   Private lenders Business Backer, Next Wave, OnDeck, and Kapitus (the "victim lenders") issued loans to small business applicants.

3.   The victim lenders accepted electronic applications and, upon approval, submitted the loan funds to a business account designated by the applicant.

4.   Approved applicants were required to pay back the loan, including a predetermined amount of interest.

5.   Beginning no later than in or about February 2016, and continuing until at least in or about January 2020, in Los Angeles County, and elsewhere, defendant MOON, together with others, knowingly and with the intent to defraud and cheat, devised, participated in, and executed a scheme to defraud victim lenders as to material matters, and to obtain money from victim lenders by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

6.   The fraudulent scheme operated, in substance, in the following manner:

a.   Defendant MOON and his co-schemers opened the Bank Accounts in the names of businesses.

b.   Defendant MOON and his co-schemers would use the Bank Account numbers of the businesses to create false bank statements that appeared to show financial transactions of the businesses.

c.   Defendant MOON and his co-schemers would use the false and forged bank statements to apply for loans from the victim lenders.

d.   Defendant MOON and his co-schemers would use counterfeit California driver's licenses to apply for the loans from the victim lenders.

e.   Defendant MOON and his co-schemers would create email accounts with Google, that is, Gmail accounts, which defendant would access and use to communicate with victim lenders in furtherance of the fraudulent scheme.

f.   Defendant MOON and his co-schemers would also use temporary phones and phone numbers when communicating with the victim lenders in furtherance of this scheme to defraud the victim lenders.

g.   By applying for loans using false information and documents, defendant MOON would cause the victim lenders to approve the loan applications and transfer loan funds to the Bank Accounts in the names of businesses that defendant and his co-schemers controlled.

h.   After receiving the loan funds from the private lenders, defendant MOON and his co-schemers would transfer most, if not all, of the funds out of the bank accounts they controlled into other bank accounts they controlled.

i.   Defendant MOON would then close the Bank Accounts in the names of businesses.

j.   Defendant MOON and his co-schemers then would either not make any payments or stop making payments to the victim lenders.

k.   In all, defendant MOON and his co-schemers fraudulently obtained at least 21 loans as part of this scheme through which defendant obtained at least $1,491,820.00 in loans.  Of that amount, defendant paid back only $$83,892.13, resulting in a loss of approximately $1,407,927.87 to the victim lenders.

3

C.   <u>USE OF THE WIRES</u>

      7.   On or about the following date, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant MOON caused the transmission of the following item by means of wire and radio communication in interstate and foreign commerce:

| DATE | ITEM WIRED |
|------|------------|
| 1/3/20 | Wire transfer of $60,000 from Rapid Finance originating in Maryland to the Open Bank Account ending in 9977 in California. |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

5

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3

4                                        TRACY L. WILKISON
                                         United States Attorney
5

6

7                                        SCOTT M. GARRINGER
                                         Assistant United States Attorney
8                                        Chief, Criminal Division

9                                        JERRY C. YANG
                                         Assistant United States Attorney
10                                       Chief, Riverside Branch Office

11                                       RUBEN ESCALANTE
                                         Assistant United States Attorney
12                                       Riverside Branch Office

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28