1  TRACY L. WILKISON
   United States Attorney
2  JERRY C. YANG
   Assistant United States Attorney
3  Chief, Riverside Branch Office
   RUBEN ESCALANTE (Cal. Bar No. 244596)
4  Assistant United States Attorney
   Riverside Branch Office
5       3403 Tenth Street, Suite 200
        Riverside, CA 92501
6       Telephone: (951) 276-6212
        Facsimile: (951) 276-6202
7       E-mail:    ruben.escalante@usdoj.gov

8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,          No. CR

13          Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                     JUNG KYOO MOON
14              v.

15 JUNG KYOO MOON,

16          Defendant.

17

18      1.   This constitutes the plea agreement between JUNG KYOO MOON

19 ("defendant") and the United States Attorney's Office for the Central

20 District of California (the "USAO") in the investigation of wire

21 fraud committed by defendant.  This agreement is limited to the USAO

22 and cannot bind any other federal, state, local, or foreign

23 prosecuting, enforcement, administrative, or regulatory authorities.

24                    DEFENDANT'S OBLIGATIONS

25      2.   Defendant agrees to:

26           a.   Give up the right to indictment by a grand jury and,

27 at the earliest opportunity requested by the USAO and provided by the

28 Court, appear and plead guilty to a sole-count information in the

1    j.    Complete the Financial Disclosure Statement on a form
2  provided by the USAO and, within 30 days of defendant's entry of a
3  guilty plea, deliver the signed and dated statement, along with all
4  of the documents requested therein, to the USAO by either email at
5  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial
6  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los
7  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay
8  criminal debt shall be assessed based on the completed Financial
9  Disclosure Statement and all required supporting documents, as well
10  as other relevant information relating to ability to pay.

11    k.    Authorize the USAO to obtain a credit report upon
12  returning a signed copy of this plea agreement.

13    l.    Consent to the USAO inspecting and copying all of
14  defendant's financial documents and financial information held by the
15  United States Probation and Pretrial Services Office.

16    3.    Defendant further agrees:

17    a.    To forfeit all right, title, and interest in and to
18  any and all monies, properties, and/or assets of any kind, derived
19  from or acquired as a result of, or used to facilitate the commission
20  of, or involved in the illegal activity to which defendant is
21  pleading guilty, specifically including, but not limited to, the
22  following that was seized on September 24, 2020:  $27,372 in U.S.
23  currency (the "Forfeitable Property").

24    b.    To the Court's entry of an order of forfeiture at or
25  before sentencing with respect to the Forfeitable Property and to the
26  forfeiture of the property.

27    c.    To take whatever steps are necessary to pass to the
28  United States clear title to the Forfeitable Property, including,

3

without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

g.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

h.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.   To the entry as part of defendant's guilty plea of a personal money judgment of forfeiture against defendant in the amount of $1,509,879.87, which sum defendant admits was derived from

4



proceeds traceable to the violations described in the factual basis. Defendant understands that the money judgment of forfeiture is part  of defendant's sentence and is separate from any fines or restitution that may be imposed by the Court.

   k. To the abandonment to the United States of any interest of the defendant in the following items that were seized on September 24, 2020:

     i. One white Galaxy Note 4 IMEI: 352305/07/014235/8;

     ii. One Samsung Galaxy S10 Black IMEI: 35729510034329;

     iii. One blue LG IMEI: 356351-09-287971-4 with power cord;

     iv. One MSI Black Desktop with no serial number;

     v. One gray HP Laptop SN 5CG9377Q5L;

     vi. One black Dell Optiplex 7010 Desktop computer 18080286013;

     vii. One gray and black ZTE flip phone;

     viii. One white Galaxy Express 3 213-453-9860;

     ix. One black Alcatel phone 213-595-2801;

     x. One gray Samsung phone IMEI 359479/09/168152;

     xi. One gray HP Laptop Model 7M-CE1013DX;

     xii. One gray HP Laptop Model 14-dk0002dx;

     xiii. One black Samsung phone model SM-A015T1;

     xiv. One gold memo pad;

     xv. One black spiral notebook;

     xvi. Bank receipts;

     xvii. One black Sandisk 16 GB Thumb Drive;

     xviii. One black Sandisk U3 Thumb Drive;

1          xix. US Bank statements;

2          xx.  Miscellaneous documents;

3          xxi. Bank and other documents;

4          xxii.    One black leather notebook;

5          xxiii.   Tax documents; and

6          xxiv.    Filed JK Trading Fictitious Business Name

7  Statement (collectively, the "Seized Items").

8          l.   To acknowledgement by defendant that he is the sole

9  owner of the Seized Items and that no other person or entity has an

10 interest in the Seized Items.

11         m.   To complete any legal documents (including, but not

12 limited to, a Federal Bureau of Investigation Waiver of Ownership of

13 Property Form and Federal Bureau of Investigation Agreement for

14 Destruction of Property Form) required for the transfer of title of

15 the Seized Items to the United States.

16         n.   With respect to any criminal forfeiture ordered as a

17 result of this plea agreement, defendant waives: (1) the requirements

18 of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

19 notice of the forfeiture in the charging instrument, announcements of

20 the forfeiture sentencing, and incorporation of the forfeiture in the

21 judgment; (2) all constitutional and statutory challenges to the

22 forfeiture (including by direct appeal, habeas corpus or any other

23 means); and (3) all constitutional, legal, and equitable defenses to

24 the forfeiture of the Forfeitable Property and money judgment of

25 forfeiture in any proceeding on any grounds including, without

26 limitation, that the forfeiture or money judgment of forfeiture

27 constitutes an excessive fine or punishment.  Defendant acknowledges

28 that forfeiture of the Forfeitable Property and entry of the money

1 judgment of forfeiture are part of the sentence that may be imposed

2 in this case and waives any failure by the Court to advise defendant

3 of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J),

4 at the time the Court accepts defendant's guilty plea.

5                          THE USAO'S OBLIGATIONS

6        4.   The USAO agrees to:

7             a.   Not contest facts agreed to in this agreement.

8             b.   Abide by all agreements regarding sentencing contained

9 in this agreement.

10            c.   At the time of sentencing, provided that defendant

11 demonstrates an acceptance of responsibility for the offense up to

12 and including the time of sentencing, recommend a two-level reduction

13 in the applicable Sentencing Guidelines offense level, pursuant to

14 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

15 additional one-level reduction if available under that section.

16            d.   Except for criminal tax violations (including

17 conspiracy to commit such violations chargeable under 18 U.S.C.

18 § 371), not further criminally prosecute defendant for violations of

19 18 U.S.C. §§ 1028A (Aggravated Identity Theft), 1341 (Mail Fraud),

20 1343 (Fraud by Wire, Radio, or Television), and 1349 (Attempt and

21 Conspiracy to Commit Mail or Wire Fraud) arising out of defendant's

22 conduct described in the agreed-to factual basis set forth in

23 paragraph 11 below.  Defendant understands that the USAO is free to

24 criminally prosecute defendant for any other unlawful past conduct or

25 any unlawful conduct that occurs after the date of this agreement.

26 Defendant agrees that at the time of sentencing the Court may

27 consider the uncharged conduct in determining the applicable

28 Sentencing Guidelines range, the propriety and extent of any

                                    7

1  departure from that range, and the sentence to be imposed after
2  consideration of the Sentencing Guidelines and all other relevant
3  factors under 18 U.S.C. § 3553(a).

4        e.   Recommend that defendant be sentenced to a term of
5  imprisonment no higher than the low end of the applicable Sentencing
6  Guidelines range, provided that the offense level used by the Court
7  to determine that range is 22 or higher and provided that the Court
8  does not depart downward in offense level or criminal history
9  category.  For purposes of this agreement, the low end of the
10 Sentencing Guidelines range is that defined by the Sentencing Table
11 in U.S.S.G. Chapter 5, Part A.

12                        NATURE OF THE OFFENSE

13     5.   Defendant understands that for defendant to be guilty of
14 the crime charged in the sole count of the indictment, that is, wire
15 fraud in violation of Title 18, United States Code, Section 1343, the
16 following must be true:  (1) defendant knowingly participated in or
17 devised a scheme or plan to defraud, or a scheme or plan for
18 obtaining money or property by means or false or fraudulent
19 pretenses, representations, promises, or omitted facts; (2) the
20 statements made or facts omitted as part of the scheme were material;
21 (3) defendant acted with intent to defraud, that is, the intent to
22 deceive and cheat; and (4) defendant used, or caused to be used, an
23 interstate wire communication to carry out an essential part of the
24 scheme.

25                      PENALTIES AND RESTITUTION

26     6.   Defendant understands that the statutory maximum sentence
27 that the Court can impose for a violation of Title 18, United States
28 Code, Section 1343, is:  20 years imprisonment; a 3-year period of

                                   8

supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty ;and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is approximately $1,509,879.87, but recognize and agree

9

1  that this amount could change based on facts that come to the
2  attention of the parties prior to sentencing.

3       9.   Defendant understands that, by pleading guilty, defendant
4  may be giving up valuable government benefits and valuable civic
5  rights, such as the right to vote, the right to possess a firearm,
6  the right to hold office, and the right to serve on a jury.
7  Defendant understands that he is pleading guilty to a felony and that
8  it is a federal crime for a convicted felon to possess a firearm or
9  ammunition.   Defendant understands that the conviction in this case
10  may also subject defendant to various other collateral consequences,
11  including but not limited to revocation of probation, parole, or
12  supervised release in another case and suspension or revocation of a
13  professional license.   Defendant understands that unanticipated
14  collateral consequences will not serve as grounds to withdraw
15  defendant's guilty plea.

16       10.   Defendant and his counsel have discussed the fact that, and
17  defendant understands that, if defendant is not a United States
18  citizen, the conviction in this case makes it practically inevitable
19  and a virtual certainty that defendant will be removed or deported
20  from the United States.   Defendant may also be denied United States
21  citizenship and admission to the United States in the future.
22  Defendant understands that while there may be arguments that
23  defendant can raise in immigration proceedings to avoid or delay
24  removal, removal is presumptively mandatory and a virtual certainty
25  in this case.   Defendant further understands that removal and
26  immigration consequences are the subject of a separate proceeding and
27  that no one, including his attorney or the Court, can predict to an
28  absolute certainty the effect of his conviction on his immigration

1   status.   Defendant nevertheless affirms that he wants to plead guilty
2   regardless of any immigration consequences that his plea may entail,
3   even if the consequence is automatic removal from the United States.

4                              FACTUAL BASIS

5       11.  Defendant admits that defendant is, in fact, guilty of the
6   offense to which defendant is agreeing to plead guilty.  Defendant
7   and the USAO agree to the statement of facts provided below and agree
8   that this statement of facts is sufficient to support a plea of
9   guilty to the charge described in this agreement and to establish the
10  Sentencing Guidelines factors set forth in paragraph 13 below but is
11  not meant to be a complete recitation of all facts relevant to the
12  underlying criminal conduct or all facts known to either party that
13  relate to that conduct.

14      Defendant resided in Los Angeles County within the Central
15  District of California.  Private lenders Business Backer, Next Wave,
16  OnDeck, and Kapitus (the "victim lenders") issued loans to small
17  business applicants.  The victim lenders accepted electronic
18  applications and, upon approval, submitted the loan funds to a
19  business account designated by the applicant.  Approved applicants
20  were required to pay back the loan, including a predetermined amount
21  of interest.

22      Between February 2016 and January 2020, in Los Angeles County,
23  and elsewhere, defendant, together with others, knowingly and with
24  the intent to defraud and cheat, devised, participated in, and
25  executed a scheme to defraud victim lenders as to material matters,
26  and to obtain money from victim lenders by means of material false
27  and fraudulent pretenses, representations, and promises, and the
28  concealment of material facts.

                                   11

Specifically, defendant knowingly participated in and devised a scheme to fraudulently apply for and obtain loans from victim lenders and unemployment insurance benefits from the California Employment Development Department ("EDD").  Defendant used the Internet, an interstate wire communications network, to carry out this scheme.  In carrying out the scheme, defendant acted with the intent to defraud. The total calculated loss from this scheme was approximately $1,509,879.87.

With respect to the loan fraud, between February 2016 and January 2020, defendant and his co-schemers fraudulently applied for and obtained loans from the victim lenders by submitting false information and documentation.  The false documentation included falsified bank statements and counterfeit California driver licenses ("CDLs").  Defendant and his co-schemers would open bank accounts in the names of businesses.  The victim lenders, relying on defendant's and his co-schemers' fraudulent applications, would approve loans and transfer loan proceeds into the bank accounts for the businesses that defendant and his co-schemers controlled.  Defendant and his co-schemers would then transfer most, if not all, the loan proceeds to other bank accounts they controlled, after which defendant and his co-schemers closed the bank accounts for the businesses.  When the loans were due, defendant and his co-schemers either paid back only a fraction of the loans or none at all to the victim lenders.

As part of the scheme, defendant and his co-schemers would create and use Gmail accounts to communicate with the victim lenders in furtherance of the fraudulent scheme.  Defendant and his co-schemers would also use temporary phones and phone numbers when

1  communicating with the victim lenders in furtherance of the
2  fraudulent scheme.

3       In all, defendant fraudulently obtained at least 21 loans and
4  credit extensions as part of this scheme through which defendant
5  obtained at least $1,491,820.00 in loans.  Of that amount, defendant
6  paid back only $83,892.13, resulting in a loss of approximately
7  $1,407,927.87 to the victim lenders.

8       Defendant fraudulently obtained the following loan:  On or about
9  January 3, 2020, in Los Angeles County, and elsewhere, for the
10 purpose of executing the above-described scheme to defraud, defendant
11 caused the transmission of the following items by means of wire and
12 radio communication in interstate and foreign commerce:  a wire
13 transfer of $60,000 from Rapid Finance, a private lender, which
14 originated in Maryland and deposited in a bank account in California
15 over which defendant exercised control, that is, Open Bank account
16 ending in 9977.

17      Defendant also fraudulently obtained the following loans:
18 $75,000 from Business Backer on or about February 17, 2016; $120,000
19 from Business Backer on or about March 6, 2016; $70,000 from Next
20 Wave on or about August 4, 2016; $68,750 from OnDeck on or about
21 December 9, 2016; $107,250 from OnDeck on or about December 27, 2016;
22 $49,590 from Kapitus on or about February 21, 2017; $48,735 from
23 Kapitus on or about June 8, 2017; $48,750 from OnDeck on or about
24 June 9, 2017; $195,000 from OnDeck on or about June 10, 2017; $58,201
25 from Rapid Finance on or about September 6, 2017; $97,500 from OnDeck
26 on or about July 12, 2017; $58,201 from Rapid Finance on or about
27 September 6, 2017; $77,960 from Kapitus on or about August 27, 2018;
28 $68,230 from Kapitus on or about October 25, 2018; $50,000 from

13

1  OnDeck on or about November 13, 2018; $69,901 from Rapid Finance on
2  or about November 17, 2018; $79,651 from Rapid Finance on or about
3  July 10, 2019; $30,901 from Rapid Finance on August 29, 2019; $24,250
4  from OnDeck on or about August 30, 2019; and $33,950 from OnDeck on
5  or about January 8, 2020.

6       In addition to his participation in the above scheme, in October
7  2019 defendant fraudulently obtained a personal loan in the amount of
8  $40,000 from Lightstream Lending, a division of Suntrust Bank.   In
9  his loan application, defendant listed with intent to defraud that he
10 worked as a supervisor for a company called Euro Design and earned
11 $120,000 per year, both of which he knew to be false.   Defendant
12 applied for the $40,000 loan using the Internet.

13      Moreover, in 2020, defendant, with intent to defraud, applied
14 for and received unemployment insurance benefits from the EDD.   He
15 used the Internet to submit these applications.   For example, in June
16 2020, defendant submitted an application to the EDD, in which he
17 falsely claimed his employer as Kuhmo with an annual salary of
18 $24,000.   Defendant received $16,024, as a result of this
19 application.   In May 2020, defendant submitted an application to the
20 EDD for S.O.K. (his wife), in which he falsely claimed that her
21 annual income was $24,000 and that her employment was terminated due
22 to the COVID-19 pandemic.   Defendant received $14,408, as a result of
23 this application.   In June 2020, defendant submitted an application
24 to the EDD for L.P., without her authorization, and collected the
25 proceeds.   Defendant received $13,160 as a result of this
26 application.   In July 2020, defendant submitted an application to the
27 EDD for Joong Park, which was one of defendant's aliases, and
28 collected the proceeds.   Defendant received $18,360 as a result of

1  this application.   In all, defendant fraudulently obtained at least

2  approximately $61,952 in unemployment insurance benefits.

3                          SENTENCING FACTORS

4       12.   Defendant understands that in determining defendant's

5  sentence the Court is required to calculate the applicable Sentencing

6  Guidelines range and to consider that range, possible departures

7  under the Sentencing Guidelines, and the other sentencing factors set

8  forth in 18 U.S.C. § 3553(a).   Defendant understands that the

9  Sentencing Guidelines are advisory only, that defendant cannot have

10  any expectation of receiving a sentence within the calculated

11  Sentencing Guidelines range, and that after considering the

12  Sentencing Guidelines and the other § 3553(a) factors, the Court will

13  be free to exercise its discretion to impose any sentence it finds

14  appropriate up to the maximum set by statute for the crime of

15  conviction.

16       13.   Defendant and the USAO agree to the following applicable

17  Sentencing Guidelines factors:

18     Base Offense Level:              7        U.S.S.G. § 2B1.1(a)(1)

19     Loss greater than $1,500,000   +16      U.S.S.G. § 2B1.1(b)(1)(I)

20     More than $1,000,000 in gross
21     receipts from financial        +2      U.S.S.G. § 2B1.1(b)(17)(A)
       institutions

22  Defendant and the USAO reserve the right to argue that additional

23  specific offense characteristics, adjustments, and departures under

24  the Sentencing Guidelines are appropriate.

25       14.   Defendant understands that there is no agreement as to

26  defendant's criminal history or criminal history category.

27       15.   Defendant and the USAO reserve the right to argue for a

28  sentence outside the sentencing range established by the Sentencing

                                   15

1  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
2  (a)(2), (a)(3), (a)(6), and (a)(7).

3  <center>WAIVER OF CONSTITUTIONAL RIGHTS</center>

4      16.  Defendant understands that by pleading guilty, defendant
5  gives up the following rights:

6           a.   The right to persist in a plea of not guilty.

7           b.   The right to a speedy and public trial by jury.

8           c.   The right to be represented by counsel -- and if
9  necessary have the Court appoint counsel -- at trial.  Defendant
10 understands, however, that, defendant retains the right to be
11 represented by counsel -- and if necessary have the Court appoint
12 counsel -- at every other stage of the proceeding.

13          d.   The right to be presumed innocent and to have the
14 burden of proof placed on the government to prove defendant guilty
15 beyond a reasonable doubt.

16          e.   The right to confront and cross-examine witnesses
17 against defendant.

18          f.   The right to testify and to present evidence in
19 opposition to the charges, including the right to compel the
20 attendance of witnesses to testify.

21          g.   The right not to be compelled to testify, and, if
22 defendant chose not to testify or present evidence, to have that
23 choice not be used against defendant.

24          h.   Any and all rights to pursue any affirmative defenses,
25 Fourth Amendment or Fifth Amendment claims, and other pretrial
26 motions that have been filed or could be filed.

27          i.   Understanding that the government has in its
28 possession digital devices and/or digital media seized from

<center>16</center>

defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

                         WAIVER OF APPEAL OF CONVICTION

     17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

     LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

     18.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 51 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $1,509,879.87; (f) the term of probation or supervised release

17

imposed by the Court, provided it is within the statutory maximum;
and (g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in Second
Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

20. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $1,509,879.87.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

21. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was

1  involuntary, then (a) the USAO will be relieved of all of its
2  obligations under this agreement; and (b) should the USAO choose to
3  pursue any charge that was either dismissed or not filed as a result
4  of this agreement, then (i) any applicable statute of limitations
5  will be tolled between the date of defendant's signing of this
6  agreement and the filing commencing any such action; and
7  (ii) defendant waives and gives up all defenses based on the statute
8  of limitations, any claim of pre-indictment delay, or any speedy
9  trial claim with respect to any such action, except to the extent
10  that such defenses existed as of the date of defendant's signing this
11  agreement.

12  EFFECTIVE DATE OF AGREEMENT

13  22.  This agreement is effective upon signature and execution of
14  all required certifications by defendant, defendant's counsel, and an
15  Assistant United States Attorney.

16  BREACH OF AGREEMENT

17  23.  Defendant agrees that if defendant, at any time after the
18  signature of this agreement and execution of all required
19  certifications by defendant, defendant's counsel, and an Assistant
20  United States Attorney, knowingly violates or fails to perform any of
21  defendant's obligations under this agreement ("a breach"), the USAO
22  may declare this agreement breached.  All of defendant's obligations
23  are material, a single breach of this agreement is sufficient for the
24  USAO to declare a breach, and defendant shall not be deemed to have
25  cured a breach without the express agreement of the USAO in writing.
26  If the USAO declares this agreement breached, and the Court finds
27  such a breach to have occurred, then: (a) if defendant has previously
28  entered a guilty plea pursuant to this agreement, defendant will not

19

1  be able to withdraw the guilty plea, and (b) the USAO will be
2  relieved of all its obligations under this agreement.

3       24.  Following the Court's finding of a knowing breach of this
4  agreement by defendant, should the USAO choose to pursue any charge
5  that was either dismissed or not filed as a result of this agreement,
6  then:

7            a.   Defendant agrees that any applicable statute of
8  limitations is tolled between the date of defendant's signing of this
9  agreement and the filing commencing any such action.

10           b.   Defendant waives and gives up all defenses based on
11 the statute of limitations, any claim of pre-indictment delay, or any
12 speedy trial claim with respect to any such action, except to the
13 extent that such defenses existed as of the date of defendant's
14 signing this agreement.

15           c.   Defendant agrees that: (i) any statements made by
16 defendant, under oath, at the guilty plea hearing (if such a hearing
17 occurred prior to the breach); (ii) the agreed to factual basis
18 statement in this agreement; and (iii) any evidence derived from such
19 statements, shall be admissible against defendant in any such action
20 against defendant, and defendant waives and gives up any claim under
21 the United States Constitution, any statute, Rule 410 of the Federal
22 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
23 Procedure, or any other federal rule, that the statements or any
24 evidence derived from the statements should be suppressed or are
25 inadmissible.

26
27
28

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES

25.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

26.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

21

1  fulfill all defendant's obligations under this agreement.  Defendant
2  understands that no one -- not the prosecutor, defendant's attorney,
3  or the Court -- can make a binding prediction or promise regarding
4  the sentence defendant will receive, except that it will be within
5  the statutory maximum.

6                     NO ADDITIONAL AGREEMENTS

7       28.  Defendant understands that, except as set forth herein,
8  there are no promises, understandings, or agreements between the USAO
9  and defendant or defendant's attorney, and that no additional
10  promise, understanding, or agreement may be entered into unless in a
11  writing signed by all parties or on the record in court.

12          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13       29.  The parties agree that this agreement will be considered
14  part of the record of defendant's guilty plea hearing as if the
15  entire agreement had been read into the record of the proceeding.

16  AGREED AND ACCEPTED

17  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
18  CALIFORNIA

19  TRACY L. WILKISON
    United States Attorney                      4/25/22
20

21  _____        _____
    RUBEN ESCALANTE
22  Assistant United States Attorney        Date

23                                          3-25-22
    _____        _____
    JUNG KYOO MOON                          Date
24  Defendant
                                            3-25-22
25  _____        _____
    H. RUSSELL HALPERN                      Date
26  Attorney for Defendant JUNG KYOO
    MOON
27

28

                              22

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  This agreement has been read to me in Korean, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          3 - 25 - 22
JUNG KYOO MOON                  Date
Defendant


CERTIFICATION OF INTERPRETER

I, ___Hyon K. Ro___, am fluent in the written and spoken English and Korean languages.  I accurately translated this entire agreement from English into Korean to defendant JUNG KYOO MOON on this date.

INTERPRETER _____ #300799 (Cert#)

_____ Date 3/25/2022

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JUNG KYOO MOON's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____
H. RUSSELL HALPERN
Attorney for Defendant JUNG KYOO
MOON

_____ Date 3/25/22

24

EXHIBIT A

EXHIBIT A

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10              April 2021 Grand Jury

11  UNITED STATES OF AMERICA,        ED CR No.

12        Plaintiff,                 I N F O R M A T I O N

13        v.                         [18 U.S.C. § 1343: Wire Fraud; 18
                                     U.S.C. § 981(a)(1)(C) and 28
14  JUNG KYOO MOON,                  U.S.C. § 2461(c): Criminal
                                     Forfeiture]
15        Defendant.

16

17      The United States Attorney charges:

18                    [18 U.S.C. § 1343]

19  A.   INTRODUCTORY ALLEGATIONS

20      1.   At all times relevant to this Information:

21          a.   Defendant JUNG KYOO MOON resided in Los Angeles County

22  within the Central District of California.

23          b.   Defendant MOON exercised control over Open Bank

24  account ending in 9977 (the "Open Bank Account") and other bank

25  accounts (collectively the "Bank Accounts").

26

27

28

1   B.    SCHEME TO DEFRAUD

2         2.    Private lenders Business Backer, Next Wave, OnDeck, and

3   Kapitus (the "victim lenders") issued loans to small business

4   applicants.

5         3.    The victim lenders accepted electronic applications and,

6   upon approval, submitted the loan funds to a business account

7   designated by the applicant.

8         4.    Approved applicants were required to pay back the loan,

9   including a predetermined amount of interest.

10        5.    Beginning no later than in or about February 2016, and

11  continuing until at least in or about January 2020, in Los Angeles

12  County, and elsewhere, defendant MOON, together with others,

13  knowingly and with the intent to defraud and cheat, devised,

14  participated in, and executed a scheme to defraud victim lenders as

15  to material matters, and to obtain money from victim lenders by means

16  of material false and fraudulent pretenses, representations, and

17  promises, and the concealment of material facts.

18        6.    The fraudulent scheme operated, in substance, in the

19  following manner:

20        a.    Defendant MOON and his co-schemers opened the Bank

21  Accounts in the names of businesses.

22        b.    Defendant MOON and his co-schemers would use the Bank

23  Account numbers of the businesses to create false bank statements

24  that appeared to show financial transactions of the businesses.

25        c.    Defendant MOON and his co-schemers would use the false

26  and forged bank statements to apply for loans from the victim

27  lenders.

28

d.    Defendant MOON and his co-schemers would use counterfeit California driver's licenses to apply for the loans from the victim lenders.

e.    Defendant MOON and his co-schemers would create email accounts with Google, that is, Gmail accounts, which defendant would access and use to communicate with victim lenders in furtherance of the fraudulent scheme.

f.    Defendant MOON and his co-schemers would also use temporary phones and phone numbers when communicating with the victim lenders in furtherance of this scheme to defraud the victim lenders.

g.    By applying for loans using false information and documents, defendant MOON would cause the victim lenders to approve the loan applications and transfer loan funds to the Bank Accounts in the names of businesses that defendant and his co-schemers controlled.

h.    After receiving the loan funds from the private lenders, defendant MOON and his co-schemers would transfer most, if not all, of the funds out of the bank accounts they controlled into other bank accounts they controlled.

i.    Defendant MOON would then close the Bank Accounts in the names of businesses.

j.    Defendant MOON and his co-schemers then would either not make any payments or stop making payments to the victim lenders.

k.    In all, defendant MOON and his co-schemers fraudulently obtained at least 21 loans as part of this scheme through which defendant obtained at least $1,491,820.00 in loans.  Of that amount, defendant paid back only $$83,892.13, resulting in a loss of approximately $1,407,927.87 to the victim lenders.

3

1   C.   <u>USE OF THE WIRES</u>

2       7.   On or about the following date, in Los Angeles County,

3 within the Central District of California, and elsewhere, for the

4 purpose of executing the above-described scheme to defraud, defendant

5 MOON caused the transmission of the following item by means of wire

6 and radio communication in interstate and foreign commerce:

| DATE | ITEM WIRED |
|------|------------|
| 1/3/20 | Wire transfer of $60,000 from Rapid Finance originating in Maryland to the Open Bank Account ending in 9977 in California. |

1
2
3                         FORFEITURE ALLEGATION

       [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

   1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal
Procedure, notice is hereby given that the United States of America
will seek forfeiture as part of any sentence, pursuant to Title 18,
United States Code, Section 981(a)(1)(C) and Title 28, United States
Code, Section 2461(c), in the event of the defendant's conviction of
the offense set forth in this Information.

   2.   The defendant, if so convicted, shall forfeit to the United
States of America the following:

     (a)  All right, title, and interest in any and all
property, real or personal, constituting, or derived from, any
proceeds traceable to the offenses; and

     (b)  To the extent such property is not available for
forfeiture, a sum of money equal to the total value of the property
described in subparagraph (a).

   3.   Pursuant to Title 21, United States Code, Section 853(p),
as incorporated by Title 28, United States Code, Section 2461(c), the
defendant, if so convicted, shall forfeit substitute property, up to
the value of the property described in the preceding paragraph if, as
the result of any act or omission of the defendant, the property
described in the preceding paragraph or any portion thereof (a)
cannot be located upon the exercise of due diligence; (b) has been
transferred, sold to, or deposited with a third party; (c) has been
placed beyond the jurisdiction of the court; (d) has been
//
//

5

1   substantially diminished in value; or (e) has been commingled with

2   other property that cannot be divided without difficulty.

3

4                                    TRACY L. WILKISON
                                     United States Attorney
5

6

7                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
8                                    Chief, Criminal Division

9                                    JERRY C. YANG
                                     Assistant United States Attorney
10                                   Chief, Riverside Branch Office

11                                   RUBEN ESCALANTE
                                     Assistant United States Attorney
12                                   Riverside Branch Office

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28